[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO STRIKE (#105)
The plaintiff, Marsden Epworth, a newspaper reporter, an at will employee, brought this action against the defendants, Journal Register Company, Torrington/Acquisition Corporation and Geoffrey Moser to recover damages to her career, earnings and earning capacity. She claims that the action of Mr. Moser firing her for writing and publishing an article critical of the Register Citizen are in violation of the plaintiff's rights under Section 31-51q of the Connecticut General Statutes and violation of an implied covenant of good faith and fair dealing. These defendants have moved to strike the plaintiff's complaint for failing to state a legally sufficient claim upon which relief may be granted.
The defendants have moved to strike plaintiff's claim that her rights under Gen. Stat. § 31-51q were violated on the grounds that (i) plaintiff, as a report for The Citizen Register, had no First Amendment right to publish anything in The Citizen Register, a newspaper she did not own; (ii) construing § 31-51q as preventing an owner or publisher of a newspaper from disciplining employees on the basis of articles written by them while on the job would render that statute unconstitutional on its face and as applied to these defendants; (iii) the legislative history of § 31-51q makes clear that § 31-51q
pertains only to speech activity that is not performed during or related to job performance.
The defendants have also moved to strike plaintiff's claim for wrongful discharge on the grounds that (i) the defendants' actions, as a matter of law, did not violate important public policy, and (ii) those causes of action CT Page 11433 are available to a plaintiff only where the plaintiff can show that she was discharged in violation of some important public policy and there is no other remedy provided by law.
Additionally, defendant Moser moves to strike plaintiff's § 31-51q claim on the ground that he was not her employer.
The plaintiff brought this action pursuant to § 31-51q of the General Statutes claiming that she was terminated from her employment with the Register Citizen for exercising rights protected by the First Amendment to the United States Constitution[1] and/or Section 3, 4 or 14 of Article First of the Constitution of the State of Connecticut.[2] Specifically, the plaintiff alleges that she was a newspaper reporter for The Register Citizen, a daily newspaper with an office in Torrington and Winsted Connecticut. Complaint, Par. 1. Plaintiff alleges that The Register Citizen was owned, either directly or indirectly, by both the defendant Journal Register Company ("Journal Register"), and defendant Torrington Acquisition Corporation. Complaint, Par. 2. The plaintiff also alleges that defendant Geoffrey Moser was publisher of The Register Citizen. Complaint, Par. 3.
Plaintiff alleges that she was terminated from her employment with The Register Citizen on March 21, 1994 because she had written an article published in the March 20, 1994 edition of The Register Citizen that cast the Journal Register in a bad light. Complaint, Par. 6. Plaintiff claims that she was terminated for exercising her First Amendment rights in violation of § 31-51q of the Connecticut General Statutes. Complaint, Par. 10.
The plaintiff also claims that her discharge constituted a wrongful discharge and/or a breach of the covenant of good faith and fair dealing because (i) "[t]he Defendants as newspaper owners and publishers have violated a public trust to protect first amendment rights and the rights of those who exercise them," and (ii) "the circumstances surrounding and reasons for the Plaintiff's dismissal were flagrantly violative of public policy as expressed in Connecticut General Statutes Sec. 31-51q and the State and Federal Constitutions." Complaint, Pars. CT Page 11434 10, 11.
The purpose of a motion to strike is to challenge the legal sufficiently of the allegations of a complaint.Gordon v. Bridgeport Housing Authority, 208 Conn. 161,170, 544 A.2d 1185 (1988). The motion admits all facts well pleaded, but does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings.Mingachos v. CBS, Inc., 196 Conn. 91, 108, 491 A.2d 368
(1985).
 I
Section 31-51q prohibits an employer from disciplining an employee "on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or sections 3, 4, or 14 of Article First of the Constitution of the State of Connecticut."[3]
The rights of members of the news media are "coextensive with and do not exceed those of members of the public in general." In Re Greensboro News Co.,727 F.2d 1320, 1322 (1984). Individuals have no right to publish a letter in a privately owned publication. SeeRattner v. Netburn, supra, 208; Midwest Video Corp. v.FCC, 571 F.2d 1025, 1054. Here, plaintiff did not own the Register Citizen; she alleges merely that she worked for it as a newspaper reporter and editor. Plaintiff had no federal or state constitutional right to publishanything in The Register Citizen. Because plaintiff had no constitutional right to publish the letter to the editor at issue, her complaint fails to state a claim for relief under § 31-51q as a matter of law.
Indeed, to construe § 31-51q as limiting the right of an owner to control the content of their newspaper would render the statute unconstitutional. The state cannot restrict the free expression rights of a newspaper's owners or publishers. Miami Herald Publishing Company v.Tornillo, 418 U.S. 241, 94 S.Ct. 2831 (1974).
 The choice of material to go into a newspaper, and the decisions made as to limitations on the size and content of the paper, and treatment of public CT Page 11435 issues and public officials . . . whether fair or unfair . . . constitute the exercise of editorial control and judgment. It has yet to be demonstrated how governmental regulation of this crucial process can be exercised consistent with first amendment guarantees of a free press as they have evolved to this time.
Id. at 258; 94 S.Ct. at 2840. See also Phelps v.Wichita Eagle-Beacon, 886 F.2d 1262, 1271 (10th Cir. 1989).
Here, in arguing that the defendants violated § 31-51q by terminating plaintiff's employment on account of the article she wrote, plaintiff is attempting to hold the defendants liable for exercising their right to control the content of the newspaper they own and publish. Plaintiff's construction of § 31-51q would render that statute unconstitutional as applied to the defendants; therefore, this court may not construe § 31-51q as providing a cause of action on the facts alleged. See Broadrick v. Oklahoma, 413 U.S. 6701, 613,93 S.Ct. 2908, 2916 (1973).
Section 5 of article first of the Connecticut constitution provides that "no law shall ever be passed to curtail or restrain the liberty of speech or of thepress." (Emphasis added.) To accept the plaintiff's position, the court would have to construe section 31-51q
as a restriction on the right of a free press. Such a construction would clearly be in violation of the Connecticut constitution.
The legislative history of section 31-51q makes it that the plaintiff has no cause of action under the statute. One of the statute's sponsors in the House of Representatives, Rep. Tulisano, explained that the purpose of § 31-51q was to prevent employees from being disciplined for the exercise of first amendment rights"which have no way to do with job performance, or on thejob, or interfering with their employment." H-348 Connecticut General Assembly House Proceedings 1983, Vol. 26, Part 15, p. 64, May 19, 1983.[4] (Emphasis added) It is apparent that the legislature intended that § 31-51q
be narrowly construed so as not to interfere with the CT Page 11436 constitutional rights of newspaper owners and publishers, or of private employers generally.
Here the "expression" plaintiff alleges as the basis for her § 31-51q claim was her desire to write and to publish a certain article critical of her employer in the newspaper owned by her employer. Thus, construing § 31-51q
as providing plaintiff a cause of action would not only render that statute unconstitutional as applied against these defendants, it also would be contrary to the legislature's intent.
 II
"Wrongful discharge" is a cause of action recognized by Connecticut courts as a "narrow public policy exception to the general proposition that contracts of indefinite term of employment are terminable at will."Morris v. Hartford Courant Co., 200 Conn. 676, 678
(1986). A cause of action for wrongful discharge lies only where a plaintiff "can prove a demonstrablyimproper reason for dismissal, a reason whose impropriety is derived from some important violation of public policy." Id. at 679 (quoting Sheets v. Teddy's FrostedFoods, Inc., 179 Conn. 471, 4712, 427 A.2d 385 (1980)) (emphasis in original). In Magnan v. AnacondaIndustries, Inc., 193 Conn. 558, 572, 479 A.2d 781
(1984), the court recognized a similar cause of action for breach of the covenant of good faith and fair dealing rounded upon a violation of important public policy.
A cause of action for breach of the covenant of good faith and fair dealing, which sound in contract, "is coterminous with, and extends no further than, a cause of action for wrongful discharge in tort." Battista v.United Illuminating Co., 10 Conn. App. 486, 495 (1987).
The Supreme Court in Morris v. Hartford,200 Conn. at 679, n. 2 (citing Magnan), has
 expressly refused to enlarge the circumstances under which an at will employee may successfully challenge his dismissal beyond the situation where the reason for his discharge involves impropriety . . . derived from some important violation of a CT Page 11437 public policy . . . . [an at will] employee cannot sustain a cause of action in contract for breach of an implied covenant of good faith and fair dealing based solely upon a discharge without just cause.
Magnan v. Anaconda Industries, Inc., supra 572.
The plaintiff claims that her discharge violated "a public trust to protect first amendment rights and the rights of those who exercise them": and, specifically, "public policy as expressed in Connecticut General Statutes Sec. 31-51q." As already set forth, the plaintiff has failed to state a legally cognizable claim under § 31-51q because she was not terminated for exercising constitutionally protected "free speech" rights. The public policy of promoting free speech rights is best furthered by affirming the legal right of the defendants to control the content of the newspaper they own and publish. Since plaintiff has failed to identify an important public policy that was violated by the defendants' alleged actions, her claim for wrongful discharge and for breach of the implied covenant of good faith and fair dealing fail as a matter of law.
 III
The plaintiff does not allege that defendant Moser was her employer. Instead, she alleges that she was an at will employee of the Register Citizen, a newspaper owned and controlled by defendants Journal Register company and Torrington Acquisition Corporation. With respect to defendant Moser, plaintiff alleges only that he was the publisher of the Register Citizen, and that he acted as the agent of the other defendants.
A cause of action rounded upon § 31-51q of the General Statutes and the common law theories of wrongful discharge and breach of the implied covenant of good faith and fair dealing contract lie only against a plaintiff's employer[5] and not directly against an employer's agent. Therefore, the plaintiff's claims against defendant Moser are insufficient as a matter of law.
IV
CT Page 11438
For the reasons stated, the defendants' motion to strike is granted.
PICKETT, J.