[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS MOTION TO STRIKE (DOCKETENTRY NO. 107)
The plaintiff filed a second amended complaint on July 7, 1997 against Galena Associates LCC, David Fiorella, Paul Ferri, Michael Ferri, Good Lube Express Company, and Good Lube Management Company (collectively, the defendants). In count one, the plaintiff alleges that the defendants constructively terminated him in contravention of public policy. Specifically, the plaintiff alleges that the defendants: (1) falsely accused the plaintiff of stealing company funds, knowing these accusations to be false; (2) failed to conduct or order any investigation into the allegedly stolen funds; and (3) made the false accusations in reckless disregard of the truth or falsity of the accusations. (Second Amended Complaint, ¶¶ 27-30.)
Galena Associates LCC (the defendant) filed a motion to strike count one on June 30, 1997, with an accompanying memorandum of law. The defendant moved to strike on the ground that count one "does not support a cause of action under the line of cases based on Sheets v. Teddy's Frosted Foods, Inc.,179 Conn. 471, 427 A.2d 385 (1980), and therefore is insufficient as a matter of law. The plaintiff filed a memorandum in opposition.
DISCUSSION
The purpose of a motion to strike is to contest the legal sufficiency of the allegations of any complaint to state a claim upon which relief can be granted. In ruling on a motion to strike, the court is limited to the facts alleged in the complaint. The court must construe the facts in the complaint most favorably to the plaintiff. If facts provable in the complaint would support a cause of action, the motion to strike must be denied. (Citations omitted; internal quotation marks omitted.) Faulkner v. United Technologies Corp., 240 Conn. 576,580 (1997).
In Sheets v. Teddy's Frosted Foods, Inc., supra,179 Conn. 480, in an effort to balance the competing interests of employers and employees, our Supreme Court recognized a public policy limitation on the traditional employment at will doctrine. The court sanctioned a common law cause of action for wrongful discharge in situations in which the reason for the discharge involved impropriety derived from some important violation of public policy. In Morris v. Hartford Courant Co., 200 Conn. 676,680, 513 A.2d 66 (1986), the court recognized the inherent vagueness of the concept of public policy and the difficulty encountered when attempting to define precisely the contours of CT Page 11399 the public policy exception. In evaluating claims, the court looks to see whether the plaintiff has alleged that his discharge violated any explicit statutory or constitutional provision or whether he alleged that his dismissal contravened any judicially conceived notion of public policy. Faulkner v. UnitedTechnologies Corp., supra, 240 Conn. 580-81. The question of whether a challenged discharge violates public policy, state or federal, by forcing the commission of criminal acts, or otherwise, is a question of law to be decided by the court. Id., 588.
The defendant moves to strike on the ground that the plaintiff has failed to allege sufficient facts to state a cause of action for common law wrongful termination. The defendant argues that the plaintiff has failed to allege a violation of an important public policy. The defendant also argues that the plaintiff has failed to allege that the termination violated a public policy for which there is no other remedy. The defendant argues that the plaintiff has another remedy for the behavior which allegedly violated public policy, specifically, a cause of action for defamation.
The plaintiff counters that the defendants' failure to investigate and knowingly making false accusations violate public policy. The plaintiff further argues that the other remedy of defamation is not certain and therefore cannot bar this cause of action.
The plaintiff alleges that the constructive termination violates "the established public policy prohibiting the making of false accusations of criminal activity without conducting prior investigation." (Second Amended Complaint, ¶ 31.) Reckless, false accusations of theft by an employer do not violate an important public policy such that the traditional at will employment doctrine is inapplicable.
In Morris v. Hartford Courant Co., supra, 200 Conn. 680, the court declined to consider whether an allegation that the false accusation of misappropriating funds was knowingly or recklessly made would have established a viable cause of action under the contours of the public policy exception. One superior court has held that "an allegation that the defendant recklessly made a wrongful accusation of criminal activity which resulted in a wrongful discharge of the plaintiff from his position thereby causing his unemployment . . ." constitutes a viable cause of CT Page 11400 action for wrongful discharge. Whittaker v. Barnes Group, Inc.,
Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 332027 (February 23, 1988) (Hale, J.) (3 C.S.C.R. 315, 316).[1] Other Superior Courts, however, have held that similar allegations are insufficient. See Reyes v. AmesDept. Stores, Inc., Superior Court, judicial district of Waterbury, Docket No. 109112 (January 18, 1994) (Sylvester, J.) (10 CONN. L. RPTR. 625, 9 CSCR 152) (allegation of malicious and intentional false accusation of theft does not rise to level of violation of important public policy); Rafael v. St. Vincent's Medical Center,
Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 287705 (August 26, 1993) (Ballen, J.) (9 CONN. L. RPTR. 610,8 C.S.C.R. 1003) (allegations that defendant employer made false accusations of theft and dishonesty with malice and intent to wrongfully discharge the plaintiff do not rise to the level of a violation of important public policy).
The court in Cuomo v. Blue Cross Blue Shield, Superior Court, judicial district of New Haven at New Haven, Docket No. 374864 (April 26, 1996) (Fracasse, J.) (16 CONN. L. RPTR. 550), held that an alleged discharge based upon an accusation the employer knows is false does not allege a violation of an important public policy. The court noted that the complaint does not allege that the discharge violated any explicit statutory or constitutional provision and does not allege that the defendant's action violated any judicially recognized notion of public policy. Id. The plaintiff here argues that there is a judicially recognized public policy against the making of false accusations of criminal activity without prior investigation but cites to no authority for its contention that the "established public policy" which he has alleged is a judicially recognized public policy in the context of employer-employee relations. Even construing the facts most favorable to the plaintiff and assuming that the defendants did knowingly make false 1, accusations, such actions are not sufficient to violate an important public policy.[2] While certain actions may abrogate public policy, not every act in derogation of a general statute, nor all conduct contrary to the common law, rises to the level of a violation of an important
public policy. Rafael v. St. Vincent's Medical Center, supra,
9 CONN. L. RPTR. 610, 8 CSCR 1004.
Furthermore, the underlying rationale of Sheets is to protect employees from being put in the position of choosing between employment and criminal acts. See Sheets v. Teddy's FrostedFoods, Inc., supra, 179 Conn. 480 and cases cited therein; CT Page 11401Faulkner v. United Technologies Corp., supra, 240 Conn. 583 and cases cited therein. It should be noted that the court inFaulkner uses the phrase "violates public policy . . . by forcing the commission of criminal acts, or otherwise." (Emphasis added.)Id. While types of employer misconduct other than coercion of criminal acts might violate established public policy, the central aim of the public policy exception is to provide "a modicum of judicial protection [to employees] when their conduct as good citizens is punished by their employers." Sheets v.Teddy's Frosted Foods, Inc., supra, 179 Conn. 477.
Moreover, the "otherwise" refers to employer misconduct that goes to employee's behavior as citizens, such as fulfilling jury duty; see, e.g., Miller v. Alpha Systems, Inc., Superior Court, judicial district of Waterbury, Docket No. 117227 (February 24, 1995) (McDonald, J.) (13 CONN. L. RPTR. 516); but does not encompass reckless accusations of criminal conduct. Even though the public policy exception might be broad enough to include reckless accusations of criminal conduct, this court should not make that determination in the face of the supreme court's emphasis on protecting employees from being forced to choose between termination and illegal activities. Until the legislature or the supreme court finds otherwise, the superior court should not undermine the well established rule that an employee at will is terminable at will. Rafael v. St. Vincent's Medical Center,supra, 9 CONN. L. RPTR. 610, 8 CSCR 1004.
Because the plaintiff has failed to allege sufficient facts to state a violation of public policy, the parties' arguments with regard to other remedies need not be discussed. The motion to strike should be granted on the ground that the plaintiff has failed to allege a violation of public policy sufficient to state a cause of action for wrongful termination.
Accordingly defendant's motion to strike is hereby GRANTED.
MELVILLE, JUDGE